# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9498 | **DATE** | 10/23/2002 |
| **CASE TITLE** | Safe-T-Products, Inc., et al. vs. Learning Resources, Inc., et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to disqualify (Doc. No. 13-1) is granted in part and denied in part. Attorney John Gabrielides is barred from further work on this matter, but the motion to disqualify the law firm Brinks, Hofer, Gilson & Lione is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | **3** number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | OCT 24 2002 date docketed | 30 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form | | |
| | Copy to judge/magistrate judge. | 10/23/2002 date mailed notice | |
| FTV | courtroom deputy's initials | DTV mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |


SAFE-T-PRODUCTS, INC., CLASSROOM )
PRODUCTS, INC., and EXTRA MEASURES, INC., )
)
   Plaintiffs, )
)
v. )  No. 01 C 9498
)
LEARNING RESOURCES, INC. and A. DAIGGER & )  Judge
CO., INC., )  Rebecca R. Pallmeyer
)
   Defendants. )

## MEMORANDUM OPINION AND ORDER

On December 12, 2001, Safe-T Products, Inc., Classroom Products, Inc., and Extra Measures, Inc. (three jointly-owned corporations, hereinafter, "Plaintiffs") filed this action against Learning Resources, Inc. and A. Daigger & Co., Inc. ("Defendants"), under 28 U.S.C. § 2201. Plaintiffs and Defendants create and sell a variety of educational products in the subjects of math and science. In response to cease-and-desist demands from Defendants, Plaintiffs filed this action seeking a declaration that products in Plaintiffs' catalogues do not infringe any valid trademark or enforceable trade dress restriction owned by either Defendant. Plaintiffs' Complaint for Declaratory Judgment (hereinafter "Plaintiffs' Complaint"), at 1, 3. Six months after the dispute arose, and without any advance warning to Plaintiffs, Defendants have moved to disqualify Plaintiffs' lead attorney, John Gabrielides, and his law firm. The litigation has been effectively stayed while the court addresses this motion.

The controversy between the parties dates back to October 12, 2001, when A. Daigger & Co. ("Daigger"), through its division ETA/Cuisenaire, asserted that certain products displayed in Plaintiffs' 2001 Catalog were being offered for sale under terms that infringe Daigger's trademark and trade dress rights. (Letter from David T. Brown, attorney for Daigger, to Bruce J. Stoneberg, President of Safe-T Products, Classroom Products, Inc., and Extra Measures, Inc., and James

Spude, Vice-President of Safe-T, Classroom Products, Inc., and Extra Measures, Inc., of 10/12/01, Ex. B to Plaintiffs' Complaint.) Daigger demanded that Plaintiffs immediately discontinue using the trademarks and trade dress, and warned that, should Plaintiffs fail to do so, Daigger would "aggressively pursue legal recourse to protect the goodwill, value and reputation embodied in the [alleged trademarks and trade dress]." *Id.* On November 30, 2001, Learning Resources, Inc. ("LRI") alleged that certain products displayed in Plaintiffs' 2001 catalog were being offered for sale under terms that infringe LRI's trademark rights. LRI demanded that Plaintiffs discontinue using the trademarks and trade dress, or LRI would "take immediate and appropriate legal action to protect [its] valuable legal rights." (Letter from Marvin N. Benn, attorney for LRI, to Stoneberg and Spude of 11/30/01, Ex. C to Plaintiffs' Complaint.) Daigger is an affiliate of LRI and both a licensor and license of intellectual property with LRI. Daigger is one of LRI's largest customers. Goldman Aff. ¶ 4. Daigger and LRI share some of the members of their upper level management and Boards of Directors. Plaintiffs' Complaint at 2.

Attorney John Gabrielides, a partner with the law firm Brinks, Hofer, Gilson & Lione (hereinafter "Brinks, Hofer" or "the firm") has represented Plaintiffs at all stages of the controversy. (Letter from John Gabrielides, attorney for Plaintiffs, to Brown of 10/17/01, Ex. H to Plaintiffs' Opposition to Defendants' Joint Motion to Disqualify Counsel.) From the date the action was filed in December 2001 through April 2002, the parties tried unsuccessfully to settle the case. On April 16, 2002, Defendants notified Plaintiffs for the first time of their intent to move for disqualification of Mr. Gabrielides and the firm. The basis for this motion is Mr. Gabrielides' previous association at the firm Laff, Whitesel, Conte and Saret ("Laff, Whitesel"). Mr. Gabrielides was an associate at Laff, Whitesel from 1990 until July 1, 1995, when he became a shareholder. He left Laff, Whitesel for Brinks, Hofer in July 1998. Gabrielides Aff. ¶ 2. During Mr. Gabrielides' tenure at Laff, Whitesel, he represented both Defendants on trademark and other matters, billing more than 200 hours between 1994 and 1998. Submission in Support of Defendants' Motion to Disqualify, Vol.

2

1, Tab 1. Defendants claim that Mr. Gabrielides' former representation is substantially related to the present lawsuit, necessitating Mr. Gabrielides and the firm's disqualification.

Having reviewed the documents provided by the parties and the law of this Circuit, the court concludes that Mr. Gabrielides should be disqualified from any further work on this matter. The court has determined further, however, that the Brinks, Hofer firm may continue to represent Plaintiffs in this case. As to the work that has been done by Mr. Gabrielides thus far, the court has determined that due to their delay in bringing the motion for disqualification, Defendants have waived the right to "set back the clock," or to ask the court to disregard the work done by him on this matter.

## DISCUSSION

Defendants contend that Plaintiffs' attorney and firm are disqualified under the Rules of Professional Conduct that have been adopted by the Northern District of Illinois ("Local Rules"). All attorneys and firms practicing in the Northern District are bound by these rules, which became effective September 1, 1999. Specifically, Defendants claim that Mr. Gabrielides is disqualified under Local Rule 83.51.9(a)[1] and that Brinks, Hofer is disqualified under Local Rule 83.51.10(b).[2] Pursuant to Local Rule 83.51(9)(a), a lawyer who has formerly represented a client in a matter shall not, without the former client's consent, thereafter represent another party in the same or a

---

[1] Local Rule 83.51.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which the person's interests are materially adverse to the interests of the former client unless the former client consents after disclosure."

[2] Local Rule 83.51.10(b) states that "[w]hen a lawyer becomes associated with a firm, the firm may not represent a person in a matter that the firm knows or reasonably should know is the same or substantially related to a matter in which the newly associated lawyer, or a firm with which that lawyer was associated, had previously represented a client whose interests are materially adverse to that person unless: (1) the newly associated lawyer has no information protected by LR 83.51.6 or LR 83.51.9 that is material to the matter; or (2) the newly associated lawyer is screened from any participation in the matter and is apportioned no specific share therefrom.

3

substantially related matter in which the party's interests are materially adverse to the interests of the former client. In re *Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897, 2001 WL 103419, at *1 (N.D. Ill. Jan. 30, 2001). Local Rule 83.51.10 bars a lawyer associated with a firm from representing a client when the lawyer knows that LR 83.51.9 would prohibit another lawyer associated with that firm from taking on the representation. *Id.*

The court recognizes its duty to protect the special relationship between attorneys and clients by ensuring that clients receive the undivided loyalty of their counsel. *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997). At the same time, it is well settled that attorney disqualification is "a drastic measure which courts should hesitate to impose except when absolutely necessary." *Owen v. Wagering*, 985 F.2d 312, 317 (7th Cir. 1993) (quoting, *inter alia*, *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983)). In addition to creating unnecessary delays, unwarranted disqualifications often deprive parties of their chosen legal advisor. *Guillen*, 956 F. Supp. at 1421. Moreover, as the Seventh Circuit has noted, motions for disqualification "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982). With these considerations in mind, the court must consider whether an ethical violation will result from Mr. Gabrielides' continued representation and whether disqualification is the proper remedy. *Alex Munoz Gen. Contractor, Inc. v. MC3d, Inc.*, No. 98 C 4489, 1998 WL 831806, at *2 (N.D. Ill. Nov. 25, 1998).

**Attorney Disqualification**

In determining whether to disqualify an attorney, courts in this Circuit employ a three-step analysis. First, the court will determine whether a substantial relationship exists between the subject matter of the prior and present representations. If the court concludes that a substantial relationship does exist, the next step is to ascertain whether the presumption of shared confidences

with respect to prior representation has been rebutted. If the court concludes this presumption has not been rebutted, the court must then determine whether the presumption of shared confidences has been rebutted with respect to the present representation. *Cromley v. Board of Education of Lockport Township High School Dist. 205*, 17 F.3d 1059, 1064 (7th Cir. 1994). If the attorney whose role is challenged is unable to rebut this second presumption, disqualification will be proper. As the Seventh Circuit has explained, the term "substantially related" boils down to whether the lawyer could have obtained confidential information in the first representation that is potentially relevant in the second. *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983).

### A. Does a Substantial Relationship Exist?

Determining whether a substantial relationship exists itself entails a three-level inquiry. The first step requires a factual reconstruction of the scope of the prior legal representation. Second, the court must determine whether it is reasonable to infer that confidential information would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client. *LaSalle National Bank v. County of Lake*, 703 F.2d 252, 255-56 (7th Cir. 1983); *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir. 1978).

Based on the court's review of the documents provided by the parties, it appears that during his tenure at Laff, Whitesel, Mr. Gabrielides likely obtained confidential information about Defendants' business practices that might be relevant to the case at hand. Laff, Whitesel's billing records indicate that Mr. Gabrielides devoted substantial time to the review and filing of various trademarks for Defendants; at minimum he billed approximately 200 hours to representations of LRI, and several additional hours to Daigger. Submission in Support of Defendants' Motion to Disqualify, Vol. 1, Tab 1. Included in these records is evidence that he worked on at least two of the marks owned by LRI that are at issue in the present lawsuit, Rainbow Fraction and Hexagram.

*Id.* Mr. Gabrielides stated in his affidavit that he has "no recollection of working on any Rainbow Fraction matter or issue for ETA/Daigger." Gabrielides Aff. ¶ 3. In any event, the billing records provided by Defendants indicate that Mr. Gabrielides did at least a small amount of work for LRI on Hexagram, worked on the Rainbow Fraction trademark application for LRI, and spoke with representatives of Daigger regarding a product called "Fraction Factory." Submission in Support of Defendants' Motion to Disqualify, Vol. 1, Tab 1, 2, 4. In 1998, Laff, Whitesel represented LRI in an action against defendant Summit Financial Products, Inc. ("Summit") for trade dress infringement, false advertising, violation of the Illinois Consumer Fraud and Deceptive Practices Act, and Unfair Competition. Mr. Gabrielides appears to have been heavily involved in the litigation until his departure from Laff, Whitesel in July 1998. Submission in Support of Defendants' Motion to Disqualify, Vol. 2, Tab 7.

Although the Summit lawsuit did not involve the marks at issue in the present litigation, Mr. Gabrielides must have been exposed to LRI's business practices, litigation strategy, and other confidential information. Mr. Gabrielides states that he has no recollection of working on any Rainbow Fraction matter or issue for Daigger, and that any work he may have done on Hexagram was insubstantial. Gabrielides Aff. ¶¶ 3, 7. Mr. Gabrielides has not denied, however, that he was privy to much of Defendants' confidential business planning and strategy.

It is reasonable to infer that confidential information about Defendants' business and legal strategies would have been given to an attorney who worked on several intellectual property matters over several years. Mr. Gabrielides does not deny this inference. The substantial relationship standard does not require that a party moving to disqualify another party's attorney point to or reveal a particular piece of confidential information which the challenged attorney actually received; its receipt will be presumed in circumstances which make it a likely possibility. *LaSalle National Bank v. County of Lake*, 703 F.2d 252, 256 (7th Cir. 1983). The second prong of the substantial relationship test is therefore met.

Applying the third prong of the Seventh Circuit's substantial relationship analysis, the confidential information and business planning Mr. Gabrielides was presumably privy to during his work at Laff, Whitesel is potentially relevant to the current litigation. Between 1994 and 1998, he counseled Defendants about intellectual property matters such as trademarks and dress, and records given to the court indicate that Laff, Whitesel assisted in developing the "Rainbow" name, a trademark at issue in this case. Submission in Support of Defendants' Motion to Disqualify, Vol. 1, Tab 1-3. In 1998, he represented LRI in a lawsuit similar to the one pending before this court. As the Seventh Circuit held in *Analytica*, it is fair to presume that some of the confidential information Mr. Gabrielides presumably gleaned in his previous work might be relevant to the current lawsuit.

In *Analytica, Inc. v. NPD Research, Inc.*, the Seventh Circuit held that prior and current representations were substantially related even though they did not deal with precisely the same issues. 708 F.2d 1263, 1268-69 (7th Cir. 1983). In *Analytica*, attorney John Fine was hired by NPD Research, Inc. ("NPD") to devise a plan whereby co-owners of stock in NPD would transfer one share of stock back to the corporation, which would then issue the stock to an NPD employee, Mr. Malec, along with a cash bonus. The stock and cash bonus were deemed to be the employee's compensation, and a deductible business expense to the corporation. To enable Mr. Fine to estimate the value of the taxable stock, NPD furnished him with information on NPD's financial condition, sales trends, and management. Malec's relationship with NPD went sour, and he left the firm in May 1977. *Id.* at 1265. His wife, who had also been an employee at NPD, left at the same time and within a month incorporated Analytica to compete with NPD in the market-research business. *Id.* In October 1977, Analytica retained attorney Fine's law firm, Schwarz & Freeman, who complained on Analytica's behalf to the Federal Trade Commission that NPD was engaged in anticompetitive behavior that was preventing Analytica from establishing itself in the market. When the FTC declined to act, Analytica brought its own suit against NPD, charging various

7

antitrust offenses. *Id.* NPD moved to disqualify Schwarz & Freeman from representing Analytica in that litigation.

Affirming the district court's decision granting the motion, the Seventh Circuit found a substantial relationship between Schwarz & Freeman's work for NPD and the Analytica lawsuit. *Id.* at 1267. The court pointed out that Mr. Fine had access to and received confidential financial and operating data of NPD. Only a few months later Schwarz & Freeman represented an adversary of NPD's before the FTC, and in that proceeding and later in the antitrust lawsuit advanced contentions to which the data Mr. Fine received might have been relevant. The data concerned NPD's profitability, sales prospects, and general market strength–all matters potentially germane to the antitrust suit. *Id.* The Seventh Circuit held that the two representations were thus substantially related, "even though we do not know whether any of the information Fine received would be useful in Analytica's lawsuit. . .or if so whether he conveyed any of it to his partners and associates who were actually handling the suit." *Id.*

The Seventh Circuit reached a similar result in *LaSalle National Bank v. County of Lake*, in which the court disqualified an attorney from representing the bank in a lawsuit against the county. The attorney had previously served as head of the civil division of the Lake County State's Attorneys office. The court observed, "[a]lthough he may not have been involved in the precise subject matter of this litigation, he was clearly privy to a substantial amount of discussion and strategic thinking." 708 F.2d 252, 256 (7th Cir. 1983).

In the case before this court, the fact that two of the marks involved in the pending lawsuit are common to Mr. Gabrielides' prior representation only strengthens the court's determination that there is a substantial relationship between his prior work for Defendants and his current work for Plaintiffs. Just as the firm in *Analytica* was presumed to know its former client's business strategy, this court presumes that Mr. Gabrielides has extensive knowledge about the business planning and strategy of the Defendants. Particularly during the litigation with Summit, Gabrielides was

presumably privy to a substantial amount of strategic thinking and discussion.

Plaintiffs argue that at most, the former and current representations bear a "superficial resemblance" to each other, and therefore are not substantially related. *Robin v. Doctors Officenters Corp.*, 686 F. Supp. 199, 205 (N.D. Ill. 1988). The court believes to the contrary, that Defendants have demonstrated that there are "specific subject matter, issues and causes of action in the former representation that are common to the present one to enable the court to determine whether the substantial relationship test has been met." *Id.* Much of Mr. Gabrielides' work for Defendants consisted of registering and reviewing their trademarks, two of which are the subject of the lawsuit filed on behalf of his current clients. As for Plaintiffs' contention that the problems are "wholly distinct," again the court disagrees. *Cf.* Committee Comment to LR 83.51.9 (recognizing that there may be an exception to disqualification for a lawyer who recurrently handled a type of problem for a former client and later seeks to represent another client in a wholly distinct problem even though the subsequent representation involves a position adverse to the prior client). Mr. Gabrielides billed hundreds of hours of intellectual property work to the Defendants, work which included reviewing the trademark status for two of the same trademarks involved in the present litigation. Far from being wholly distinct, the matters reveal substantial likeness to one another. Finally, the information regarding Mr. Gabrielides' prior representation of Defendants supplies the court with more than "abstract" evidence; it is sufficient for the court to conclude that the work is substantially related to the current representation. *Gen-Cor, LLC v. Buckeye Corrugated, Inc.*, 111 F. Supp. 2d 1049, 1056 (S.D. Ind. 2000); *SWS Financial Fund A v. Salomon Brothers, Inc.*, 790 F. Supp. 1392, 1401-02 (N.D. Ill. 1992).

## B.     Is the Presumption of Shared Confidences Rebutted?

Having found that a substantial relationship between the former and current representations does exist, the court will proceed to determine whether Mr. Gabrielides has rebutted the

presumption of shared confidences with respect to the prior representation. *LaSalle National Bank v. County of Lake*, 703 F.2d 252, 256 (7th Cir. 1983). The affidavits supplied by Defendants indicate that Mr. Gabrielides was privy to extensive confidential information. Richard Woldenberg, President and Chief Executive Officer of LRI, stated that "Mr. Gabrielides became extremely knowledgeable about LRI's business, its legal tactics, and its strategies in the intellectual property area." Woldenberg Aff. ¶ 5. Mr. Woldenberg also claims that he had "numerous discussions [with Mr. Gabrielides] regarding case strategy and handling. . . .He was very much exposed to my way of looking at and thinking about intellectual property litigation." Woldenberg Aff. ¶ 6. Dennis Goldman, President of ETA/Cuisenaire, a division of Daigger, stated that Daigger "utilized Mr. Gabrielides' services consistently and extensively," and that Mr. Gabrielides "became extremely knowledgeable about Daigger/ETA's business, its legal tactics, and its strategies in the intellectual property area." Goldman Aff. ¶ 10. Plaintiffs have not refuted these statements; rather, they have relied on their argument that there was no substantial relationship between the former and the current representation. Therefore, Plaintiffs have not rebutted the presumption of shared confidences.

### C. Is the Presumption Rebutted for the Current Representation?

Finally, the court must determine whether the presumption of shared confidences has been rebutted with respect to the current representation. In other words, the court must determine whether the knowledge of the "confidences and secrets" of the Defendants which Mr. Gabrielides brought with him has been passed on or is likely to be passed on to the members of Brink, Hofer. *Schiessle v. Stephens*, 717 F.2d 417, 421 (7th Cir. 1983). Seventh Circuit case law dictates that the presumption of shared confidences can be rebutted by demonstrating that "specific institutional mechanisms" (e.g. "Chinese Walls") have been implemented to effectively insulate against any flow of confidential information from the "infected" attorney to any other member of his present firm.

10

*Id.* Defendants correctly point out that Brinks, Hofer has not demonstrated any mechanism they have put in place to prevent shared confidences. Rather, Plaintiffs rely on Mr. Gabrielides' affidavit, as well as the affidavits of his colleagues, in which they all state that no confidences were ever revealed. Gabrielides aff. ¶ 12; Gilson aff. ¶¶ 3, 4; Slavick aff. ¶¶ 3, 4; Stoneberg aff. ¶¶ 3, 4. While this will help save Brinks, Hofer from being disqualified altogether, it is not sufficient to rebut the presumption regarding Mr. Gabrielides himself under Seventh Circuit law. The firm allowed Mr. Gabrielides to serve as the primary attorney on the case; this is hardly a "Chinese Wall."

Because a substantial relationship exists between Mr. Gabrielides' prior and current work and because Plaintiffs have not rebutted the presumption that he was privy to confidential information, the court concludes that Mr. Gabrielides must be disqualified from doing any further work on this case.

**Disqualification of Law Firm**

Mr. Gabrielides is presumed to have confidential information protected by Local Rule 83.51.9 that is material to the matter at hand. Therefore, in order to satisfy Local Rule 83.51.10(b), Brinks, Hofer should have screened Mr. Gabrielides from this lawsuit. The court nevertheless declines to take the drastic step of disqualifying the entire firm, which would be unduly prejudicial to Plaintiffs. Instead, the court will allow Brinks, Hofer to remain on the case, with the understanding that Mr. Gabrielides will be immediately removed from the matter. The court reaches this conclusion for two primary reasons. First, Plaintiffs' affidavit and those of their attorneys state that no confidential information passed from Mr. Gabrielides to his new partners or associates. Second, by unnecessarily delaying their disqualification motion for six months, Defendants waived their right to object to Mr. Gabrielides' representation of Plaintiffs during that time period.

Mr. Gabrielides stated that he has not given Jerome Gilson or Scott Slavick, the other

11

Brinks, Hofer attorneys on the present matter, any material information based on his prior representation of Defendants. Gabrielides Aff. ¶ 12. Gilson and Slavick's affidavits state that they never received any confidential or proprietary information regarding either Defendant, or any privileged communication or work product relating to Mr. Gabrielides' work with either Defendant while at his former firm. Gilson Aff. ¶¶ 3, 4, Slavick Aff. ¶¶ 3, 4. Bruce Stoneberg, president of each of the Plaintiffs, swore in an affidavit that he never received any privileged communication or work product relating to Mr. Gabrielides' work with either Defendant, nor has he been provided with any information that is confidential or proprietary to either Defendant. Stoneberg Aff. ¶¶ 3, 4. Given that the Brinks, Hofer attorneys and Plaintiffs have not been given any material or confidential information, the court is satisfied that screening him from any further work on this case will meet the ethical standards set forth in the Local Rules. In effect, the court hereby requires that Brinks, Hofer erect an "institutional mechanism" discussed above to screen Mr. Gabrielides from this matter.

This conclusion is bolstered by the court's determination that Defendants' delay in bringing this motion for disqualification was unwarranted and prejudicial to Plaintiffs. As early as October 17, 2001, Plaintiff Daigger was aware of Mr. Gabrielides' involvement in the matter. (Letter from Gabrielides to Brown of 10/17/01, Ex. H to Plaintiffs' Opposition to Defendants' Joint Motion to Disqualify Counsel.) By November 13, 2001, LRI was aware of Mr. Gabrielides' involvement. (Letter from Brown to Gabrielides of 11/13/01, Ex. I to Plaintiffs' Opposition to Defendants' Joint Motion to Disqualify Counsel "[w]e have notified [LRI] of the subject matter of this Settlement. . . . Learning Resources will communicate with you separately regarding these issues, if any.") Defendants acknowledge that the dispute arose no later than October 12, 2001, and they first notified Plaintiffs that they would seek disqualification on April 16, 2002. Defendants' Reply in Support of Joint Motion to Disqualify Counsel at 9, n.6 (hereinafter "Defendants' Reply"). Six months went by while the parties negotiated; Defendants said nothing about Mr. Gabrielides' role.

Waiver is a valid basis for the denial of a motion to disqualify; a former client who is entitled to object to an attorney's representation of an adverse party on the grounds of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right. *Chemical Waste Management, Inc. v. Sims*, 875 F. Supp. 501, 504-5. (N.D. Ill. 1995). Although the length of the delay in bringing a motion to disqualify counsel is obviously important, it is not dispositive. *Id.* at 505. A court should also consider factors such as when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred; and whether disqualification would result in prejudice to the nonmoving party. *Id.* (citations omitted).

For six months, Defendants were aware of Mr. Gabrielides' representation of Plaintiffs. Rather than raising the possible conflict immediately, they opted to engage in a series of settlement talks with Plaintiffs. Defendants argue they consciously declined to mention the conflict earlier out of fear that it would chill settlement negotiations. The court does not find this explanation satisfactory. Defendants now claim they "will be in a complete state of paranoia regarding what Gabrielides knows and how he is going to use it against them" if he is allowed to continue serving as counsel to Plaintiffs. (Defendants' Reply at 2.) If they are so worried now, why were Defendants not in a "state of paranoia" during the earlier settlement negotiations? In settlement talks as well as in court, the court presumes that having knowledge of an opponent's strategy and inner workings might give a negotiating attorney an improper advantage.

As troubling as Defendants' delay is, Seventh Circuit and Northern District of Illinois case law leave the court unable to conclude that Defendants entirely waived their right to move to disqualify Mr. Gabrielides and the firm. Compare *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 909 F. Supp. 582, 584 (N.D. Ill. 1996) (waiver found after twenty-four months); *Chemical Waste Management, Inc. v. Sims*, 875 F. Supp. 502 (N.D. Ill 1995) (waiver found twenty-one months); *Shermanchoice, Inc. v. Wellmark Community Ins., Inc.*, No. 98 C 8414, 1999 WL 608721, at *3

13

(N.D. Ill. Aug. 5., 1999) (no waiver after three months). However, the court finds that by actively negotiating with Plaintiffs' counsel for several months, Defendants waived the right to object to any work done by Plaintiffs' counsel between October 12, 2001 and April 16, 2002. Additionally, due to the unnecessary delay in bringing the motion, the court will not order the disqualification of Brinks, Hofer. To do so would be to cause substantial prejudice to Plaintiffs, whose lawsuit has already been delayed during the pendency of this motion.

## CONCLUSION

For the reasons set out above, Defendants' motion to disqualify (Doc. No. 13-1) is granted in part and denied in part. Attorney John Gabrielides is barred from further work on this matter, but the motion to disqualify the law firm Brinks, Hofer, Gilson & Lione is denied.

ENTER:

Dated: October 23, 2002

REBECCA R. PALLMEYER
United States District Judge